# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| MOORE MEDICAL CENTER, L.L.C., ) | |
| ) | Case No. BK-06-12867-WV |
| Debtor. ) | Chapter 7 |
| ) | |
| JAMES E. WILLIAMS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | Case No. CIV-09-1331-M |
| ) | |
| MOORE MEDICAL CENTER, L.L.C., ) | |
| ) | |
| Appellee. ) | |

## ORDER

This matter comes before the Court on the appeal by appellant James E. Williams from an order issued by the Bankruptcy Court in bankruptcy case no. 06-12867-WV. This appeal arises from the Bankruptcy Court's September 30, 2009 Order on Proof of Claim of James E. Williams dismissing appellant's claim for the failure to establish an enforceable contract, and the lack of an alternative basis for allowance of the claim.

## I.    BACKGROUND

Michael R. Schuster ("Schuster") was the principal organizer of an effort to construct and operate a medical and surgical hospital in Moore, Oklahoma. In July 2000, Moore Medical Center, L.L.C. ("Moore Medical Center") was formed to be the legal entity to construct and operate the hospital facility. The members of Moore Medical Center were TSG, Inc. ("TSG"), certain physicians and other investors, and Moore Medical Development, L.L.C. ("Moore Medical Development"). Schuster was the managing member of Moore Medical Development, and Moore

1

Medical Development was the managing member of Moore Medical Center. Schuster also served as president and principal shareholder of TSG.

Moore Medical Center arranged for the construction of the hospital through the United States Department of Housing and Urban Development ("HUD") whereby HUD committed to insure, i.e. guarantee, a first mortgage loan made by GMAC Commercial Mortgage Corporation in the approximate amount of $27 million. As a condition of insuring the loan, HUD required that a letter of credit in the amount of $4.6 million be obtained for the benefit of the hospital, to cover the start-up operating costs of the hospital. HUD further required that the funding of any letter of credit neither be a liability of the hospital nor appear in the accounting records of the hospital. Instead, it was required that any letter of credit be the sole liability of the members or principals of the hospital. These prohibitions notwithstanding, the hospital was authorized by HUD to repay sums drawn under a letter of credit if done so from surplus cash as defined by HUD.

Schuster approached appellant James E. Williams ("Williams") about arranging for the $4.6 million letter of credit with the understanding that the hospital would repay the letter of credit from accounts receivable generated by operation of the hospital. Williams was provided with *pro forma* projections showing that the hospital would be able to repay the letter of credit debt. Williams stated, as reasons for his agreement to arrange for the letter of credit, that the Moore community needed a hospital and, because he owned other properties in the area, he would benefit from the hospital.

Williams did, in fact, arrange for the issuance of a $4.6 million letter of credit with Gold Bank as evidenced by a number of separate documents. Williams individually and his entities entered into a Loan Agreement in the principal amount of $6.5 million for the purpose of, among

other things, funding a $4.6 million letter of credit as required for HUD financing. In order to provide Moore Medical Center with the $4.6 million letter of credit, Gold Bank required Williams to be liable for any draws under the $4.6 million letter of credit, and that Williams pledge collateral for purposes of securing the loan. Williams and his entities executed a promissory note payable to Gold Bank in the amount of $6.5 million to cover any draws under the $4.6 million letter of credit. The promissory note was payable on demand, but if no demand was made, it was due on June 12, 2008. All draws under the $4.6 million letter of credit were deemed advances under the promissory note from Williams to Gold Bank.

Pursuant to the Loan Agreement, TSG and Schuster executed a $4.6 million Note in favor of Williams obligating them to pay Williams for any advances and costs of the $4.6 million letter of credit. TSG and Schuster also executed a guaranty in favor of Gold Bank guaranteeing Williams and affiliates payment in performance of the Gold Bank loan. In an Assignment of Economic Interest, TSG assigned the entirety of its 117 units of economic interest in Moore Medical Center to Williams. This Assignment of Economic Interest provided, *inter alia*, that TSG would cause the hospital to require all distributions of cash to be made to, or for the benefit of, Williams for payment of the expenses related to the $4.6 million letter of credit, and to replenish any outstanding balance on the letter of credit. Furthermore, in a Pledge Agreement between TSG and Williams, Williams pledged all of his economic interest in the hospital to secure his obligations under the Assignment of Economic Interest.

Williams was not a party to the HUD agreement. Nor was there a writing executed by the Moore Medical Center by which the hospital agreed to pay Williams, or reimburse Williams, or to otherwise assume liability for payment of, any sums for which Williams might become liable in

3

connection with the $4.6 million letter of credit, or draws made thereunder. Williams testified that he did not ask the hospital to sign a note in his favor acknowledging its alleged liability on the $4.6 million letter of credit because Moore Medical Center had no equity remaining in its assets. In making the business decision to engage in the $4.6 million letter of credit transaction, Williams testified that he considered if Moore Medical Center were successful and it paid the $4.6 million letter of credit, he would reap a substantial reward in that he would own a 35% economic interest in the hospital in perpetuity.

The Moore Medical Center was built. The hospital requested and received draws on the Gold Bank $4.6 million letter of credit until the bank advanced the entire $4.6 million pursuant to the terms of the letter of credit. Moore Medical Center failed to repay sums drawn under the $4.6 million letter of credit, and on October 28, 2006, filed Chapter 11 bankruptcy.[1] The guarantors of Williams' debt to the bank, Schuster and TSG, have also filed bankruptcy. Virtually the entire $4.6 million plus interest is due and owing by Williams to Gold Bank.

## II. STANDARD OF REVIEW

On appeal, a bankruptcy court's findings of fact must be reviewed under the "clearly erroneous" standard. "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996). "Moreover, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Harmsen*, 320 B.R. 188, 189 (10th Cir. BAP 2005)(internal citation omitted). "The clearly erroneous standard does not apply to the conclusions of law of the

---

[1] The Chapter 11 bankruptcy was later converted to a Chapter 7 bankruptcy proceeding.

bankruptcy court. Such conclusions are reviewed *de novo*." *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997). Furthermore, "[o]n the mixed question of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry." *In re Wes Dor, Inc.,* 996 F.2d 237, 241 (10th Cir. 1993).

III. DISCUSSION

Williams sets forth several issues for resolution, all serving as variations of whether the Bankruptcy Court erred in concluding there was no enforceable oral contract between Moore Medical Center and Williams giving rise to an allowable claim, and no alternative basis allowed for Williams' proof of claim.

A. Contract

As an initial matter, Williams asserts that his full performance coupled with Moore Medical Center's acceptance of the benefits renders the oral contract enforceable. Upon performance, Williams argues that the contract could no longer be voided as indefinite or uncertain. Rather, upon performance, it becomes a binding contract because the element of definiteness is supplied. The Court disagrees.

"There can be no question about the right of parties to enter into an oral contract, a written contract, or a contract partly in writing and partly parol." *Groendyke Transp., Inc. v. Merchant*, 380 P.2d 682 , 683 (Okla. 1963)(internal citation omitted). Under Oklahoma law, destruction of an oral contract for vagueness and uncertainty is disfavored, and if the oral contract is sufficiently definite and certain in its totality so that the intention of the contracting parties can be ascertained with reasonable certainty, it will not be held void for indefiniteness and uncertainty, even though it fails

to enter into all of the details respecting the subject matter, especially where there has been partial performance. *Phillips Petroleum Co. v. Hitch*, 241 F.2d 178, 183 (10th Cir. 1957). However, where parties to an oral contract fail to use language sufficiently definite to enable the court to ascertain their interests with reasonable certainty in respect to essential features, the agreement does not constitute an enforceable contract even where full performance is alleged. *See Brown v. Bivings*, 277 P.2d 671 (Okla. 1954) (observing that an oral contract is indefinite and uncertain if the evidence does not disclose what, if any, terms the oral agreement was settled upon, or there is a total absence of proof relative to the term the alleged agreement was to exist. Possible matter for review includes: the length of time the agreement would be operative; what is required of each to discharge his obligation toward the other during the term of the contract; provisions for handling of financial arrangements; and the responsibility of each party in the event of failure.).

Here, the Bankruptcy Court found there was not an unconditional agreement that Moore Medical Center would assume liability for the $4.6 million letter of credit debt, based upon evidence there were no specific payment terms, such as the timing and amount of payments, or whether interest would be, or for that matter whether the payments would be, made directly to the bank or would be made to reimburse Williams for payments he had made. Moreover, the Bankruptcy Court found that Williams' account of his purported oral agreement provides few details. If Gold Bank were to make demand on Williams for payment of the $4.6 million letter of credit debt, would Moore Medical Center be unconditionally obligated to immediately pay the bank, or reimburse Williams, even if the hospital had minimal cash flow? Or was the hospital's obligation dependent on its financial condition? Was the hospital's obligation to pay conditioned upon there being sufficient accounts receivable to pay the operating expenses of the hospital first? In finding that

Williams' testimony lacked credibility, the Bankruptcy Court held the most that could be said, and that from Schuster's testimony, is that the hospital would be liable on the $4.6 million letter of credit debt only if there were sufficient cash flow from the collection of accounts receivable to make unspecified payments to Gold Bank, or to Williams, at unspecified dates.

Based on the record, the Court cannot say that the Bankruptcy Court's findings were clearly erroneous such that there was no factual support in the record. While the Court is mindful of the authorities cited and relied upon by Williams, to the effect that an oral contract is not void for uncertainty, even though the details relative to the subject matter are not specified if it is sufficiently definite so that the parties' intention can be ascertained with a reasonable degree of certainty, the Court is of the opinion that "such rule can have no application to the present case by reason of the failure of the alleged agreement to give consideration to more essential matters which were required to be definitely fixed and understood in order to support an oral agreement." *Brown*, 277 P.2d at 675. Because the Court must not re-weigh the evidence where two permissible views exists, the Bankruptcy Court's finding was not improper.

Williams next asserts that the Bankruptcy Court erred in using the HUD agreement to which Williams was not a party to invalidate the contract with Moore Medical Center, and that knowledge of the HUD agreement cannot be imputed to Williams. Again, the Court disagrees.

As a general rule, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Okla. Stat. tit. 15, § 163. Here, the Bankruptcy Court observed that the HUD agreement prohibited Moore Medical Center from being obligated to pay the $4.6 million letter of credit debt and this circumstance explains a lack of candor with respect to Williams' testimony. As the Bankruptcy Court explained, "the obvious reason that

7

the purported agreement was not memorialized was that the HUD documents forbade that the hospital become liable on the LOC debt and further that accounting records not reflect any LOC debt. As a sophisticated businessman and a real estate investor for some 30 years, it is highly unlikely that Williams was not aware of the HUD prohibition." Order, docket no. 868, at 9. Due regard is given to the Bankruptcy Court to assess the credibility of witnesses as related to the evidence. Because the evidence is plausible in light of the record viewed in its entirety, the Court finds that the Bankruptcy Court was not clearly erroneous in relying upon the HUD agreement. Further, the Court finds the manner in which the Bankruptcy Court used this evidence, *e.g.*, a determination of witness credibility, falls short of imputing knowledge of the HUD agreement to Williams. As the Court declines to recast the evidence of the HUD agreement in the manner suggested by Williams, the Bankruptcy Court's ruling will not be set aside as clearly erroneous insofar as its use of the HUD agreement to explain a witness' credibility.

To the extent that Williams argues that the Bankruptcy Court utilized the incorrect standard as related to the Restatement First of Contract, § 32, the Court finds that the conclusion would be no different under the Restatement Second of Contracts § 32. Because, as set forth above, the Court cannot ascertain the terms and conditions by which the parties agreed to be bound, the terms of the alleged oral contract were not reasonably certain.

Williams asserts as the final grounds for error that the Bankruptcy Court improperly ignored HUD's acknowledgment in the Letter of Credit Reserve Agreement that Moore Medical Center could repay the letter of credit. Even so, an appellate court may not reverse the findings of the bankruptcy court even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *In re Harmsen*, 320 B.R. at 200. Even if the Bankruptcy Court did not

8

consider this evidence, the cumulative impact of all the circumstances in this case established there are two permissible views of the evidence when the record is viewed in its entirety. As a result, the Court finds that the Bankruptcy Court's choice between permissible views of the evidence cannot be clearly erroneous.

Accordingly, the Court finds no evidence in the record of clear error as related to the Bankruptcy Court's determination that the oral contract was unenforceable.

B. Alternative Bases

The next issue for resolution is whether the Bankruptcy Court erred in denying alternative theories of recovery. The Bankruptcy Court found that promissory estoppel does not apply because there is no enforceable promise of Moore Medical Center to pay the Gold Bank $4.6 million letter of credit. Williams asserts that the Bankruptcy Court improperly analyzed the doctrine of promissory estoppel. Williams posits that if promissory estoppel is dependant upon an enforceable contract, there would never be a situation in which to apply the equitable doctrine of promissory estoppel, because any recovery would be based on an enforceable contract.

In Oklahoma, the equitable doctrine of promissory estoppel gives "a person who reasonably relies to his detriment on another's promise is given by law the benefit of a contract wherein an agreement did not come to fruition." *Bickerstaff v. Gregston*, 604 P.2d 382, 384 (Okla. Civ. App. 1979). However, the Court finds that Williams incorrectly characterizes the Bankruptcy Court's ruling as the failure to establish an enforceable contract. Rather, the Bankruptcy Court determined that there was not a promise by Moore Medical Center to pay the $4.6 million letter of credit debt, and there can be no basis for promissory estoppel.

Now, the Court must determine whether there is a promise whereby the equitable doctrine

of promissory estoppel applies. Williams cites to the Bankruptcy Court's findings of fact that "everyone's understanding from the beginning" was the $4.6 million letter of credit would be paid down as Moore Medical Center collected its accounts receivable, and that Schuster stated to Williams that he would be repaid through Moore Medical Center. The difficulty posed by the evidence cited by Williams is that Moore Medical Center, as an entity, never promised repayment as to the $4.6 million letter of credit. At most, the evidence cited by Williams demonstrates that Schuster may have promised repayment of the $4.6 letter of credit. In the absence of evidence to demonstrate that Schuster could bind the Moore Medical Center to his purported promise to pay, the Court finds there is no basis to disturb the Bankruptcy Court's ruling. Having reviewed the record, the Court is convinced that the Bankruptcy Court's findings of fact are well grounded in the record and are not clearly erroneous.

Finally, Williams asserts the Bankruptcy Court erred in denying his unjust enrichment claim on the bases that: (1) no bankruptcy cases were cited by Williams where unjust enrichment was allowed as a theory of recovery and (2) the failure to establish that the creditors of the bankruptcy estate were unjustly enriched.

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another...." *C.C.Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996). "Before a party will be entitled to recover for unjust enrichment, however, there must be enrichment to another coupled with a resulting injustice." *Id*. (internal citation and quotations omitted).

As an initial matter, Williams asserts that the Bankruptcy Court erred in determining that

unjust enrichment cannot be the basis for a claim in bankruptcy. For support, Williams cites to the Bankruptcy Code which allows for the "right to an equitable remedy for breach of performance if such breach gives rise to payment....," and the historical background of the statute which "permits the broadest possible relief in the bankruptcy court." 11 U.S.C. § 101(5)(B); Historical and Statutory Notes to 11 U.S.C. § 101. It is also well-established that a debtor's property interests, or lack thereof, are determined by state law in the bankruptcy context: "[p]roperty interests are created and defined by state law. Unless some federal interests requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). As such, the Court's review of the issue of whether an unjust enrichment claim exists in a bankruptcy case is limited to Oklahoma law.

Williams cites to the Tenth Circuit case of *In re Seneca Oil Co.*, 906 F.2d 1445 (10th Cir. 1990), for support that unjust enrichment is an appropriate basis for a claim in a bankruptcy case under principles of Oklahoma law. In *Seneca*, the Department of Energy filed a proof of claim in the debtor-oil company's Chapter 11 proceeding to recover alleged oil overcharges under a constructive trust theory. The Tenth Circuit held that Seneca's overcharging was sufficient evidence of wrongdoing for the imposition of a constructive trust.

Williams characterizes *Seneca* as an unjust enrichment and constructive trust case and avers that this case alone shows that unjust enrichment is an appropriate basis for a claim in a bankruptcy case. In this Court's view, *Seneca* stands for the proposition that the remedy of constructive trust may be imposed against specific property in certain instances where wrongdoing is established. The *Seneca* Court, however, did not specifically review the validity of a claim for unjust enrichment in

11

the bankruptcy context. Furthermore, Williams concedes that he "does not have a constructive trust claim and does not seek to remove any of the assets from the bankruptcy estate solely for his benefit." Brief-in-Chief of Appellant, docket no. 10, at 22-23. Since Williams is not seeking a constructive trust for his claim, the Court finds that *Seneca*, a case principally about the application of the remedy of constructive trusts, is inapposite to the issues presented in this case.

As further support that unjust enrichment is an appropriate basis for a claim in the bankruptcy context, Williams cites to *In re Fitzgerald*, 117 F.3d 1428 (10th Cir. 1997), an unpublished case which does not serve as binding precedent. Williams further cites to out of state cases even though it is well-established that "[p]roperty interests are created and defined by state law." *Butner*, 440 U.S. at 55. In the absence of clear authority that such a claim may be allowed based on unjust enrichment, the Court finds that this claim should not be allowed on the alternative grounds of unjust enrichment.[2]

III. CONCLUSION

Accordingly, for the reasons set forth above, the Court AFFIRMS the Bankruptcy Court's September 30, 2009 Order or Proof of Claim of James E. Williams.

**IT IS SO ORDERED this 23rd day of August, 2010.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[2]In light of this finding, the Court need not address Williams remaining arguments.